J-S20006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LEEANN SANTIAGO | |
| Appellant | No. 2551 EDA 2015 |

Appeal from the Judgment of Sentence July 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000981-2012

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 23, 2017**

Leeann Santiago appeals from the judgment of sentence of five years probation that was imposed after a jury convicted her of endangering the welfare of a child ("EWOC").  We reject her challenge to the sufficiency of the evidence supporting her conviction and affirm.

Appellant and her co-defendant Jason Virgile were convicted of endangering the welfare of Appellant's son by a previous relationship, I.V. At the time of the pertinent events, I.V. was living with his sister, Appellant, and Virgile.  Virgile's two sons, who were one year old and four years old, respectively, came twice a month to stay at the home.

The Commonwealth's proof was as follows. Aracely Thornton, Appellant's mother, testified that on May 2, 2011, she was babysitting the

then two-year-old I.V. at her home in Philadelphia. She noticed bruises on his face between his forehead and his nose and on the front and back of his ear. Since the bruising "was in multiple areas," Ms. Thornton became alarmed. N.T. Trial, 5/26/15, at 81. She went to the police station to report the injuries, and, when Appellant retrieved I.V., Ms. Thornton discussed the injuries with her. Appellant asked I.V. who inflicted the wounds, and he responded, "Jason did it." *Id*. at 105, 106. Ms. Thornton testified that I.V. referred to Virgile as Jason and that there was no one else involved in I.V.'s life, other than Virgile, whose name was Jason. *Id*. at 107.

Appellant took I.V. to the hospital, where he was x-rayed, and she called his biological father, Valerie V., who went to the emergency room and observed bruises on I.V.'s head and ear area. Prior to May 2, 2011, Valerie had never observed those types of injuries on his son's face. Valerie asked I.V. how he was hurt, but never received a "clear response." *Id*. at 199.

The next time that Valerie was called to the hospital for I.V. was October 25, 2011. At that time, I.V.'s injuries were much more extensive. I.V. had a laceration on the top of his head that required staples, "bruises on the both sides of his head near his ears," a "mark, like a patch on his stomach, miscellaneous marks on his thighs, an open sore on his leg," and also a rib fracture. N.T. Trial, 2/27/15, at 51. I.V. again refused to tell his father how he sustained the wounds.

Due to the nature of I.V.'s harm on October 25, 2011, hospital personnel immediately suspected that I.V. was the victim of child abuse and called police. Philadelphia Detective Manuel Gonzalez of the Special Victims Child Abuse Unit responded. At the hospital, Detective Gonzalez asked Appellant what had happened, and she replied that I.V. hit a glass table with his head. On October 25, 2011, I.V. was removed from the care of Appellant and Virgile and taken to Ms. Thornton's home. On November 4, 2011, Detective Gonzalez interviewed Appellant about the matter.

Appellant represented that I.V. hit his head on a glass table while he was playing with his sister and Virgile's two sons, but Appellant was unable to explain how I.V. incurred the remainder of his wounds. She informed Detective Gonzalez that I.V. never came home from his day care center with injuries and stated that she took care of her two children when they were at home. On November 4, 2011, Philadelphia Detective Edward Enriquez interviewed Virgile, who indicated that he did not know how I.V. was hurt.

Melissa Hampton, who worked in Child Protective Services at the Philadelphia Department of Human Services, was assigned to investigate the matter. On October 26, 2011, she went to see I.V. at Ms. Thornton's home. Ms. Hampton interviewed the child and asked how he had sustained his wounds. Initially, I.V. merely shrugged. When asked about the large head laceration, "he said mom did it." N.T. Trial, 5/26/15, at 53.

Ms. Hampton next interviewed Appellant and Virgile. Appellant maintained that I.V. sustained the head injury by hitting "his head on the table" in the dining room while he was playing with the three other children and while she was cooking in the kitchen. *Id*. at 55. Appellant also represented that his facial bruising occurred when "she was pulling a T-shirt down over his head." *Id*. at 56. She indicated that she did not know how the leg sore was caused but said that it must have been from a fall. Appellant maintained that the mark on his stomach was a result of the boy scratching himself with a toy. At the time, Appellant appeared "somewhat angry, defensive and somewhat nonchalant about the child's injuries." *Id*. at 57.

When Ms. Hampton discussed the matter with Virgile, he told her that I.V. was injured while he was retrieving his children from their mother's home. Virgile represented that, when he returned with his two boys, Appellant "ran up to him to tell him or show him [I.V.'s] injury, and that he told her to take the child to the hospital." *Id*. at 59. Ms. Hampton noted the discrepancy in Appellant's and Virgile's versions of events in that Appellant said that Virgile's two children were present when I.V. lacerated his head while Virgile stated that the injury in question occurred while he was retrieving his children from their mother's home.

On October 28, 2011, there was a hearing to determine if I.V. and his sister should remain in protective care, and Virgile told Ms. Hampton that he

and Appellant were the only adults with "access to [I.V.] in reference to his injuries." *Id*. at 65.

Doctor Maria McColgan testified as an expert medical witness on behalf of the Commonwealth. She saw pictures taken by emergency room physicians of the injuries that I.V. sustained on May 2, 2011. He had "bruises to the right side of his forehead, head, his ear, the bridge of his nose, under his nose, . . . the side of his face, and his cheek." *Id*. at 148. Dr. McColgan testified to a reasonable degree of medical certainty that the described wounds were "inflicted injuries and not consistent with accidental injury." *Id*. at 149.

Dr. McColgan also reviewed the medical records from the October 25, 2011 incident and stated that I.V. had a laceration to his scalp, a healing rib fracture, "linear scars on the back of his legs," and bruising around the ears on both sides of his face and the back of his head. There was no innocent explanation for all these injuries, particularly the rib fracture. She explained that bruising to the ear was not typical in either accidental or self-inflicted injury and was indicative of child abuse. Dr. McColgan concluded to a reasonable degree of medical certainty that the multiple wounds suffered by I.V. on October 25, 2011, was the result of physical abuse. *Id*. at 154.

Based on this evidence, Appellant and Virgile were convicted of EWOC. This appeal followed imposition of the above-described judgment of

sentence. Appellant presents one issue for our review: "Was the evidence insufficient to sustain the conviction for EWOC?" Appellant's brief at 3.

In addressing the merits of Appellant's sufficiency challenge, we employ this standard:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Sunealitis*, 153 A.3d 414, 419 (Pa.Super. 2016) (citation omitted).

The offense of EWOC is defined, in pertinent part, as follows: "(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1) (emphases added). Our Supreme Court has noted that, while the crime in question is a specific intent crime, the "EWOC statute is necessarily drawn broadly to capture conduct that endangers the welfare of a child." *Commonwealth v. Lynn*, 114 A.3d 796, 819 (Pa. 2015). EWOC is committed when:

> (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could

threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Id*. at 819.

Herein, Appellant acknowledged to Ms. Hampton that she cared for I.V. and thus had a duty of care. The second and third elements of EWOC are present because Appellant created the circumstances that threatened I.V. by inflicting injuries on him on October 25, 2011. Appellant's argument is that the Commonwealth failed to prove how I.V.'s October 25, 2011 injuries occurred and that they could have been accidentally sustained. She posits that the head laceration was caused when the child ran into a table. We disagree with her position.

I.V. was interviewed by Ms. Hampton of Child Protective Services, and the child told her that his mother inflicted the laceration to his head. N.T. Trial, 5/26/15, at 53. Moreover, while Appellant claimed that the head injury was caused when the child ran into a glass table while playing, the factfinder was free to reject her testimony. **Sunealitis**, **supra**. It is clear that the jury believed Dr. McColgan's testimony that the injuries that I.V. displayed on October 25, 2011, were not the result of an accident but from physical abuse. Thus, Appellant's EWOC conviction was based on sufficient evidence since it established that she inflicted a wound to the two-year-old's head that required metal staples. **Commonwealth v. Passarelli**, 789 A.2d

708, 716 (Pa.Super. 2001), *aff'd per curiam*, 825 A.2d 628 (Pa. 2003) (holding that evidence was sufficient to support EWOC conviction where Commonwealth presented expert witness who opined that injuries sustained by child were intentionally inflicted and not the result of an accident).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017